Your Honor, good afternoon. May it please the Court, my name is James Lopesenz. I represent Major Margaret Witt. I will try to reserve five minutes for rebuttal. Major Witt joined the Air Force in 1987 and served her country for 19 years. For a six-year period between 1997 and 2003, she lived with another woman and had an intimate relationship with that woman on the other side of the state from the base where she was doing her reserve duty. At all times, she kept her sexual life private and completely separate from the military. In 2004, one year after her relationship with that woman had ended, she was informed that she was under investigation for possible discharge because she had had sexual relations with that same woman. She was asked if she would speak and answer questions on it. She said no. She was informed in the fall of 2004 by her immediate commander that she was being suspended without points in pay, meaning she could no longer earn any credit toward her retirement, which she would get if she got to 20. And 16 months later, she received notice of a discharge proceeding being initiated. Twenty-two months later, she had her administrative discharge board hearing in Air Force Base Robbins in Georgia. That was actually after the district court had dismissed this case. And we found out three weeks ago when the government notified us that the district court had dismissed our suit under Rule 12.B.6 saying that there are no set of facts in the world upon which you could ever prevail. I submit the district court is wrong for two reasons. The first reason the district court is wrong is because the district court said that Lawrence used minimum scrutiny to identify the appropriate level of scrutiny for the right involved. What is your interpretation of the level of scrutiny that Lawrence requires in this context? Strict. I would think it would be strict given all the line of fundamental rights cases that the majority relied upon in that case. The government says that because the Lawrence majority opinion doesn't use the words strict scrutiny, it couldn't be possibly applying strict scrutiny. Hasn't the court generally been quite clear to use that phrase when it intends strict scrutiny? Usually, yes. It's a little puzzling that in this case they didn't use either strict scrutiny or minimum scrutiny. Let me pose a more specific question to you. In the Beller case, which was decided by this court in 1980, it predates the specific rule at issue here, but it dealt with the discharge. You're familiar with it. It applied at some intermediate level of scrutiny, however one understands intermediate, and its author turns out to be the same author as wrote Lawrence. Should we make anything of that? Should we interpret Lawrence to be also applying some kind of intermediate level of scrutiny, since it doesn't use minimal and it doesn't use strict? If they are similar, why aren't we bound by Beller? You could do that, Your Honor. If you did do that, and you applied intermediate scrutiny, then that would require you to subject the law and regulations at issue to intermediate scrutiny, which would require you to ask if they were narrowly tailored. Well, wouldn't it just require us to say that Beller is the governing case, essentially, that there's nothing that allows this three-judge panel to overrule previous three-judge panel? No, there is something. I mean, I think if I am correct, Lawrence adopted strict scrutiny. Lawrence is not the one that allows it, but compels it. Right. But if we read Lawrence differently than you do, as being somewhere in that murky middle, then what follows from that based on our own court's prior precedent? If you went down that path, I think you would say the district court used the wrong standard of review, reversed and remanded for further proceedings. I think that's where you would go. But it's a question of law. Why wouldn't we decide it instead of sending it back to the district court? The level of scrutiny is a question of law. And that, I understood you to say, if you decide that it's something intermediate, you could go further and say, intermediate scrutiny, it requires that the law be narrowly tailored. This is the absolute opposite of a narrowly tailored law. And so the law is facially invalid. And you could say, major wit wins. You could also remand to the district court and let the district court take the first crack at applying that standard. I'm not saying you couldn't do either one. But the point I want to get back to for a moment, just because I don't want to get away from why I think strict scrutiny is appropriate here, I just want to point out that if you parse all the words of the Lawrence majority opinion and you try to find words that send you in one direction or another, the one thing that no one can deny is that the opinion uses the word liberty and substantive due process liberty interest over and over and over and over and over. And there has never been in the history of the Republic ever a substantive due process liberty interest that when a law infringed upon it was tested only against minimum rational basis scrutiny. Never. So I don't see how anyone can argue that that's the standard that Lawrence is applying. You know, almost no matter what level of scrutiny, well, if we invoke a level of scrutiny higher than minimum, we'd have to send it back, wouldn't we? Because if it was dismissed for failure to state a claim, the government's really never had an opportunity to do that. But another legal question that would immediately arise at any other level of scrutiny is whether it's narrowly tailored. And for that, all you have to do is look at the law. You don't need any evidence for that. It's not narrowly tailored. It's the exact opposite of a narrowly tailored law. It is, I don't know what to call it, it is a globally monstrously expansive law because the right that is burdened is burdened 24 hours a day, 365 days a year, everywhere from the South Pole to the North Pole. There's absolutely no place on the planet that a gay service member can engage in homosexual conduct without violating these regulations and being subject to discharge, ever. It doesn't matter whether it's in their home or anywhere else. So you don't have to send it back. I don't think you could rule that opinion in Lawrence adopts the dissent of Justice Stevens from Bowers. And that I think is one area, Judge Graber, which shows you that really what's at stake is strict scrutiny. Justice Stevens said the cases we ought to be looking at are also the cases that Justice Kennedy said we ought to be looking at. They're the fundamental rights cases that begin with Griswold. Those cases, cases like Griswold, they get strict scrutiny. Justice Stevens' dissent uses a bunch of words almost interchangeably. I don't see why you can't use really the words right and liberty interchangeably. And he talks about fundamental decision making is being covered by an essential liberty, an essential liberty to make fundamental decisions and that that liberty surely embraces the right to engage in non-reproductive sexual conduct that others may consider offensive. There's also this sentence in Lawrence, and I don't know what you would make of this, towards the end, the court says the Texas statute furthers no legitimate state interest, which can justify its intrusion into the personal and private life of the individual, suggesting that, you know, the absence of no compelling interest, no, in other words, that being the sort of central holding, it doesn't use the terminology that one would expect in the final holding with respect to strict scrutiny. What's your response to that, or am I taking it out of context? I mean, how do you respond to my concern about that? That's the one sentence the government wants to go to and block out everything else and have the court just focus solely on that. And I think what the court was saying there, what Justice Kennedy was saying, was it's a kind of an a fortiori argument, which lawyers and judges use all the time. Not only does that not mean strict scrutiny, it doesn't even, there's not even a legitimate interest here. But it said that, and they also said there's no legitimate interest here that would justify limitation of this right. And that word, justifying, creating a balance, creating a requirement that the courts balance the governmental interest against the individual substantive due process liberty interest, is completely inconsistent with minimum scrutiny. You don't balance in minimum scrutiny. You don't balance ever. And you don't look at... Is it inconsistent with intermediate scrutiny? Or is it an example of that? No, it's not inconsistent with intermediate scrutiny. In intermediate scrutiny, you do balance the right against the government's interest. One thing I wanted to just touch on briefly was the government talks about, well, not the government, Justice Kennedy talks about the Romer case. And he says the Romer case is a case where the court said this is irrational because it's based purely on hatred and prejudice. That's all it is. He says that the parties before us in Lawrence have made that Romer argument, and it's, he says, a tenable argument, suggesting that we could go down that road. But I think it's significant to look at why he says he's not going to go down that road. He could have gone down that road. And the reason he really could have gone down that road is because the statute targeted only sodomy engaged in by same-sex couples, not by opposite-sex couples. He said, well, if we do that, then they can just amend the law so that it covers opposite-sex couples as well, then it won't be based solely on hatred of homosexual people, and then they may assume that they can do it then. So we're not going to go down that road. That's why I'm not deciding the cases, this case, the way we decided Romer. That's why I'm deciding it. Isn't that where Beller comes into play, at least as binding on this panel, whether rightly or not, and at the justifications put forward for greater limitations in that context than in the context of civilians in their private home? I would agree generally with that, Your Honor. And I think you can be persuaded to follow the approach of the Court of Appeals for the Armed Forces, and that is the court that Congress created to deal with military... But Beller is our own case, isn't it? Yes, but... And we're bound by our own precedents. What authority, just as a jurisprudential matter, do we have to pick a different court of appeals? If there is a case directly on point, in the Ninth Circuit, you're required to follow it. But Beller is pre-Lawrence, so if what I'm saying is that... It's consistent with Lawrence, we'd still be bound by it, I would suggest. I don't know. It's consistent with Lawrence, but it's not recognizing that there's a fundamental substantive due process liberty interest in there. I mean, if all it says is, there's this argument over here, there's this argument over here, and we think the appropriate thing to do is to go in the middle. That's all it says. That doesn't provide you a lot. I don't really think that it makes a lot of sense for you to say, let's pretend Lawrence was never decided and just go back to Beller. Lawrence is here. It means something. The Court of Appeals for the Armed Forces, which deals only with military cases day after day after day, and was created to develop that expertise and apply it daily, they have decided that Lawrence means something that maybe is consistent with Beller. They say it deserves exacting constitutional scrutiny. They don't really say what that is. But they say it should be applied on an as-applied basis to the individual facts of the individual service member before them. And that's really the last thing that I wanted to talk about was, I think you should decide both of those questions, what level and whether to do it versus not. On the one hand, we give some deference probably to the Military Court of Appeals, look at military matters, if we're not bound by our own precedent. But on the other hand, is it a workable, practical alternative to review each case such as the case brought here on an as-applied basis in light of the statute that Congress passed? If there have been 15,000 gay people terminated from military service, does that mean each one gets a hearing as applied? Whether what Congress applies to them? I have two responses. The first is just to point out that the U.S. Supreme Court has suggested in another context, the First Amendment free speech context, which is a fundamental right. Nobody can quarrel with the fact that freedom of speech is a right. But in Parker v. Levy, the Supreme Court said, in the military context, we're going to see that applied, as applied, to the individual facts of the individual case before us and exactly what did Captain Levy say, and are his remarks protected? So you have precedent for that from the U.S. Supreme Court. You do have to decide this question of facial or as applied. You're pointing out that while you're assessing practicality, you also are supposed to be assessing the degree to which I think you're interfering with military life. It's fine with me if you say it is unconstitutional on its face, doesn't meet whatever level of scrutiny this is, and no one can be discharged under it. But what I'm saying is that if you look at the degree of interference with the military, isn't that a lot more interference than looking to the particular facts of the case, you would have a number of choices about if you decided to follow the Markham approach as to where to draw that as applied line, which I think after a while wouldn't mean that we'd have to have millions of hearings and have a lot of debate every time. You could decide that where the circumstances are that the service member had kept their private, their sex life private, and had never mixed it with the military, never did it on a base, never, it was totally separate, that it's unconstitutional as applied to that group. If you did that, that would interfere to some degree with the military, but it probably, you know, it wouldn't interfere in all those, however many thousands of cases there are. You could decide that it's unconstitutional as applied to people who engage in this fundamentally protected activity with a civilian partner. If you did that, it wouldn't apply to as large a group as everyone and it would have somewhat less interference with the military. You could decide, and you only have to decide this case, that whatever the appropriate analysis is, that where you combine all these things, that at least as applied to someone like Major Witt, who kept her private life private, whose only partner was a civilian, and who the evidence indicates never caused a problem in her unit, it's unconstitutional at least as applied to that narrow class of people. You don't have to decide anymore to decide this case if you don't want to. On the other hand, I do think that strict scrutiny is appropriate and it would be appropriate to strike the whole law. I would like to reserve the rest of my time if I can. You may. I'll hear from Mr. Cohn. Good afternoon and may it please the court. I'm Jonathan Cohn representing the United States of Congress. Your Honor, because this court already has essentially rejected Plaintiff's claims in Holmes and Phillips, and because Plaintiff herself concedes that she cannot prevail under traditional rational basis review, this case really does come down to the question of whether the Supreme Court's decision in Lawrence elevated the standard of review. And because Lawrence did not recognize any new fundamental rights in any context, let alone the military context where courts traditionally defer to the political branches of government, Lawrence did not elevate the standard of review and this court should affirm the decision below. What do you make of the Lawrence majority's liberty interests? For example, the sentence, the liberty protected by the Constitution allows homosexual persons the right to make this choice, in which he's referring to the choice of intimate conduct with another person, another consenting adult. And there's similar references to liberty interests. What are we to make of those? Your Honor, Major Witt does have a liberty interest. The question is whether the liberty interest is a fundamental right. Because she has a liberty interest, she receives some protection under substantive due process, but unless there's a fundamental right, the protection is only rational basis. Well, how do we divine from the Lawrence opinion as a whole what it was trying to do when there are sentences at the heart of liberty is the right to do this and autonomy and all of those references. How do we fit that with rational basis review, which deals with things like the Department of Motor Vehicles? How do we decide whether those things mesh? A couple things about that, Your Honor. First of all, the Supreme Court made clear in Glucksburg that a threshold inquiry for anything above rational basis review is the existence of a fundamental right. And the Court made clear that it does not matter whether a liberty interest sounds in personal autonomy. It does not matter whether a liberty interest is personal or profound, and certainly the liberty interest here is personal or profound. That does not matter. What matters in the end is simply whether there's a fundamental right, and that comes down to one simple question. Is that right deeply rooted in our histories and traditions? Is it implicit in the concept of ordered liberty? So what does this sentence mean? Their right to liberty under the due process clause gives them the full right to engage in their conduct without intervention of the government. What does that sentence mean? I would suggest, Your Honor, that sentence be construed in the context in which it was written. And the previous statement talks about how the State should not demean the existence of homosexuals by criminalizing their behavior. The Court was not using anything beyond that language. As Your Honor noted about 15 minutes ago, the Supreme Court full well knows what the phrase fundamental right means. It didn't use the phrase fundamental right here. It used the phrase fundamental right to describe the right in Roe, to describe the right in Eisenstadt. But here, very notably, it didn't say fundamental right. But it did use these other phrases that are typically associated with something more than minimal rational basis scrutiny. So why wouldn't it be a reasonable reading of the tea leaves to view this as some kind of intermediate scrutiny, whatever that means? I mean, first we label it, and then we figure out what it means, which is a whole other problem. But here's why, Your Honor. Under the Supreme Court's decision in Agostini, it's not for lower courts to presume that the Supreme Court has implicitly overruled its precedents. In Agostini, the Court was clear that the Supreme Court What precedent? Lawrence is the precedent that we're trying to understand. Your Honor. Glucksberg made clear on page 722 that the standard of review is mere rational basis review in the absence of a fundamental right. It's a threshold requirement. There must be a fundamental right before you go above rational basis review. And this Court has recognized that. In footnote 5 of Judge Canby's decision for the Court in Russell v. Hug, it recognized that And there's a good reason for Glucksberg holding that. The Supreme Court wanted to avoid the complex case-by-case balancing that you would have if you have a standard above rational basis. The Court wanted to rein in due process analysis and provide responsible guideposts. It wanted to eliminate case-by-case balancing. But if you elevate the standard above rational basis to intermediate scrutiny or this active rational basis that plaintiff's proposing, if you do either of those things, you are inviting back the case-by-case balancing that Glucksberg tried very hard to avoid. Lawrence should not be read as implicitly overruling Glucksberg, A, because Agostini says we should not presume that the Court implicitly overruled its precedents, and B, because Lawrence doesn't even cite Glucksberg, let alone purport to overrule it. It doesn't cite Glucksberg. So we should not construe Lawrence as having overridden, overruled Glucksberg. But it applies something. It examines the law in some way that seems more complex than a typical rational basis review, which generally says, well, if there's any conceivable reason the State could have had, it's just fine, and doesn't go into the kind of detail that it goes into. So is all of that just interesting dictum, or are we supposed to make something of it? Your Honor, the reason why I think the Supreme Court went into that is it was trying to debunk the notion that moral condemnation justifies the law. And it wanted to debunk it, so it went through chronologically its cases, and it made clear that moral condemnation is an insufficient basis for a law. But, Your Honor, I think this Court recognizes that Lawrence is not a pinnacle for clarity, and there might have been some hand-wringing, and the Court might have recognized there are some arguments that arguably suggest there should be higher – something higher than rational basis, but the Court very clearly stopped short of that line. It recognized certain arguments, but it never took that last step of recognizing a fundamental right. And if the Supreme Court, in the criminal-civilian context, decided to stop very clearly short of that line of recognizing a fundamental right, then under principles of restraint with respect, this Court should do the same. As the Second Circuit recognized in U.S. v. Writers and Researches, absent a clear statement from the Supreme Court that it's recognizing a fundamental right, the circuit courts should not recognize the fundamental right. The D.C. Circuit en banc in Dronenberg back in 1984, it's a precursor to the don't-ask-don't-tell policy. The D.C. Circuit recognized that if it's at all, in any degree, doubtful that the we think it's certain that lower courts should not do so. The Supreme Court stopped clearly short of the line of recognizing a new fundamental right. And maybe there was some hand-wringing. Maybe there was some recognition that the arguments were not entirely specious, but the Court clearly stopped short of that line. It did not recognize a fundamental right. It did not use the language of strict scrutiny. It did not use the language of intermediate scrutiny. At the end of the day, in its conclusion – What would be the language of intermediate scrutiny, in your view? Intermediate scrutiny would be important government interest and substantial relationship between means and ends. And the Court didn't do that. As Your Honor noted, the Court used the language of rational basis, legitimate state interest. But in any event, Your Honor, there is no room for intermediate scrutiny in substantive due process analysis absent a fundamental right. If there's no fundamental right, the standard has to be rational basis, according to Glucksberg, according to footnote 5 of Russell v. Hugg. What do you do with your opponent's argument that if you're just doing a rational basis review, first there's no real reason to characterize the right involved at all? And you would usually start looking at the state statute and say, well, now what rational basis can possibly be conceived to support this law? And it doesn't have to have anything to do with the facts of this case or anything else. You just sit around and imagine some reason that the state might have had to pass this law. And if you can find one or imagine one, you uphold it. A couple things about that, Judge Canby. First of all, again, I think the Court and Justice Kennedy wanted to be emphatic, and they're debunking the notion that moral condemnation is sufficient to sustain a law. And that's why they're so thorough. Chris, I don't even understand why that's irrational. Many people would agree with that, Your Honor, but the Supreme Court reached that holding, and it wanted to be clear that the moral condemnation that Justice Berger had recognized in his concurring opinion in Bowers was insufficient to sustain a law. And that's why they went through all that language, all that analysis chronologically of their decisions. But second, Your Honor, as I note in response to Judge Craver's excellent question, there is some language in Lawrence which suggests there was some hand-wringing. I can't represent that Lawrence is a pinnacle of clarity. There is some language in there suggesting the Court was grappling with these very same issues. But what's remarkable at the end is the Court very clearly stopped short of that line. And you had to use the word fundamental right. It did so in the context of Roe, but it did not do so here. It stopped short of that line. And with respect, this Court should do the same. If we were to disagree, I mean, you and opposing counsel are really at opposite ends of the spectrum. You're in favor of rational basis review. They're in favor of strict scrutiny. If we were to believe, and this is just for the sake of this question, that there's something intermediate going on here, what would be the bottom line that we would reach and why? Well, if this Court were to conclude that, in effect, Lawrence implicitly overruled Luxburg and there's some intermediate scrutiny, then I would suggest, as Your Honor noted, at most the standard of review should be Beller. And then Judge Kennedy in Beller ruled in favor of the United States. Beller is binding precedent. So if Beller is still good law, if there's still intermediate scrutiny, then we still prevail. The difference, of course, is that the policy in consideration here is, in fact, a different policy and presumably the government would have to re-justify it. So why wouldn't we then do, as your opponent suggests, and remand it? Oh, for a couple reasons. The policy is actually less restrictive than the one in existence in Beller. The current policy requires there to be conduct, at least a propensity, whereas the one in Beller was looser. As this Court recognized in Watkins, the policy there used the word desire, which is looser than the current one. That was more restrictive. This is the a fortiori case of Beller. So although it's a different policy, that just shows why we're more right here. But second, if the Court wants to look to some support, we have congressional findings. We had nine days of congressional hearings with almost 90 witnesses. That, with respect, is the record this Court should review. There's no reason to send this back down and develop a new record. We know the basis for Congress's thinking, and Congress recognized that sexual tensions can be a powerful force that can be disruptive to unit cohesion and the mission of the military. General Powell, speaking on behalf of all the Joint Chiefs, made that point. The Senate Armed Services Committee, in their report, made that point. I gather your bottom line point is that there's evidence from which Congress could have reached either conclusion, and it shows this conclusion. And even under intermediate scrutiny, we would be bound by that, as distinct from strict scrutiny. Is that a fair summary? With respect, Your Honor, and again, we don't think there's any place for intermediate scrutiny under Glucksberg, page 722. But if this Court were going to go there, we'd say Beller is binding law. This policy is less restrictive. And if the Court wanted to look at a record, look at Congress's record with respect. So much of our earlier cases went on the division between act and status. And indeed, the present regulation does. It says, it's called somewhat deceptively, don't ask, don't tell. You don't ask about status, but you can ask about conduct. You can ask about homosexual acts, sexual acts, under the present regulation. Not at the application process. If there's credible information kicking off an investigation, then you can ask about it. Yes, Your Honor. And that's what they did here. I mean, you know, the government asked. Anyway, they investigated. They launched an investigation. And that whole dichotomy was based on the fact that status was really the only thing that could be protected, so long as homosexual activity could be criminalized. And it seems to me Lawrence removes that whole dichotomy, that whole structure. And so what don't ask, don't tell makes that same distinction. We no longer have that barrier to skate around. And consequently, the issue is that we have the whole idea of separating, as this regulation and much of our precedent did, between mere status, which you could protect, and homosexual conduct, which you couldn't protect. The ground for it has disappeared with Lawrence. Well, Your Honor, with respect, and if I in any way misconstrued your question, please let me know. Well, it's not much of a question. But I'm interested. Well, no, I'm interested in your reaction to it. My response is this. The court in Lawrence did recognize there is some connection between the conduct and the status. And the court said that you can't criminalize that behavior in the civilian context. It applied rational basis review and struck it down. With respect, we agree that there should be rational basis review. But in the military, in the military, especially in the non-criminal context in the military, there is a rational basis for the very reason this Court recognized in Holmes and Phillips. And that ultimately is the distinction. This is the military. This Court has recognized time and again, as the Supreme Court has recognized, that the military is a unique animal and special deference is warranted. And that underscored this Court's decisions in Holmes and Phillips. And that's why this Court should affirm the decision below. Mr. Conant, what do you make of the military appellate tribunal's holding, which I understand it was that post-Lawrence, some kind of intermediate scrutiny should apply, requiring one to look at the don't ask, don't tell policy as applied? Your Honor, a couple of things about that. The U.S. Court of Appeals for the Armed Forces is an Article I court. And this court doesn't defer to that court's decisions, especially on matters of law. And this is a question of law. And with respect to that court, that court simply erred by adopting and, in effect, creating this new standard of review called searching constitutional inquiry. As Glucksberg makes clear, absent a fundamental right, the standard is rational basis. Markham correctly recognized there was no fundamental right, but then created this new standard which shouldn't exist. It was error of that court to create that standard. It should be if it's not rational basis, it should be Beller, but it should be rational basis. So just with respect, Markham erred. If you want to look at the decisions of other courts, three of this Court's sister circuits and four State supreme courts have all recognized that Lawrence did not apply anything above rational basis and did not recognize a fundamental right. With respect, those courts got the right answer, and we respectfully urge this Court to do the same. There's one point I want to respond to that Plaintiff develops in her reply brief. She says that there are cases in which intermediate scrutiny is applied. And they cite various cases, Youngberg, Riggins, Selle, Apteker. But in all of those cases, there was a fundamental right, and that's the distinction. Those are fundamental rights cases, and the reason why intermediate scrutiny was applied and not strict scrutiny is that Selle, Riggins, Youngberg all occurred in the custodial setting, either criminal or civil commitment, and that's why the scrutiny was ratcheted down from strict to intermediate. But in all those cases, there was a fundamental right. In Selle, Youngberg, and Riggins, the right at issue was freedom from bodily restraint, freedom from forced medication, what the Supreme Court in Glucksburg described as the right to bodily integrity. And the Supreme Court cited Roshin v. California, which describes the right as fundamental, deeply rooted in our history and traditions, and implicit in the concept of order and liberty. The final case they cite is Apteker, which dealt with the right to travel, which Apteker described as fundamental. Apteker also cites Kent v. Dulles, which described the right as deeply rooted and dating back to Magna Carta. So long story short, those cases did apply something which is arguably intermediate scrutiny, but those are all fundamental rights cases. If there's no fundamental right, Glucksburg makes clear the standard of review is rational basis. And because Lawrence did not recognize any new fundamental right, the standard of review has to be rational basis. One final point I want to make. He noted Justice Stevens' dissent in Bowers, and he suggests that the Supreme Court in Lawrence adopted that dissent with respect as incorrect. All the court did was quote one paragraph from Justice Stevens' dissent, which made two points, number one, that moral condemnation by the majority is insufficient to sustain a statute, and number two, that there's a liberty interest. The Court very noticeably did not quote the next paragraph, which talked about fundamental rights. In fact, the Court apparently disagrees with Justice Stevens' conclusion that there's a deeply rooted history and tradition, because Lawrence says we're not going to resolve the history. The history is complex. The history is in doubt. We're not going to resolve it. On that plane, the Court apparently disagreed with Justice Stevens. But that comment by the Court is critical, because as this Court knows, for there to be a fundamental right, there has to be a deeply rooted history and tradition of protecting that right. And Lawrence at bottom, Lawrence at bottom said we're not going to try to figure this one out. The history is in doubt. We're not going to resolve it. For that reason, rational basis applies. There is no fundamental right. This Court's decision is in Holmes and Phillips' control. If this Court has no further questions. I don't believe that we do. Thank you, Mr. Cohn. Thank you. And I believe Mr. Lobsance has some rebuttal time remaining. Thank you, Your Honors. I'll try to make four points quickly. First, with respect to what the Bowers, excuse me, what the Lawrence majority said about Justice Stevens' dissent in Bowers, they didn't just approve one paragraph. They said, quote, his, quote, analysis, in our view, should have been controlling in Bowers and should control here. That's on page 578. Your Honors asked me some questions about Ninth Circuit precedent, and I just wanted to point out that I submit you are bound to follow the Ninth Circuit precedent in the Thorn case, which we cited, which involved an unmarried woman and a married woman who had an extramarital affair, which then ended. After it had ended, the woman applied to be hired by a police department where the man worked. The Ninth Circuit held that that was a First Amendment right, that her activity, that extramarital affair was covered by a First Amendment right of intimate association, and that without any showing that that activity in some way would interfere with her doing her job, a job that she had never had, that she was applying for, that refusing to give her the job because she had this extramarital affair would not pass any level of constitutional scrutiny whatsoever, not even the lowest, even though it's totally clear that First Amendment rights get strict scrutiny. I wanted to compare this briefly, this person who sexually molests a child and commits a crime after, say, 19 years in the military. That person is not automatically, completely, totally excluded from the military and gone. That person can remain in the military if they carry the burden of showing it's not likely to happen anymore and their presence doesn't interfere with unit morale. Now, can you think of anything that would interfere more with unit morale, at least in a sort of social way, than having a child molester in the unit? I can't think of anything. But that person at least gets a chance to show that they should deserve to stay. Major Witt doesn't get that chance. The child molester, if he's after 19 years and he's close to his 20, he qualifies under the regulation for retention until his 20, so at least he gets his pension. But this regulation, AR 36-3209, has a specific provision which singles out only people who engage in homosexual conduct and says only for them does that retention regulation not apply and they cannot be held over to their 20. Lastly, Judge Gould, you asked a question about just the practicality of holding a lot of hearings and trying to decide on a case-by-case basis. I just wanted to point out that it used to be that way in the Reagan era. It used to be that way. When I did the Watkins case, Sergeant Watkins was drafted in the 60s and he had what was then called an Article 13 discharge board hearing in Korea. This is in your opinions, in the three different Watkins opinions, it's referenced. At that time, although you were homosexual, and he was always an open homosexual, always throughout his 15 years, you were allowed at that time to make a showing that your presence in the unit didn't affect unit morale or discipline. He made it. That's what the board found and they retained him. So at least at that time, there were thousands of board hearings being held looking at the individual facts of the case and the Army didn't think it was so impossible, the Army in that case. It's not impossible, but they changed the regulation so that now you can't develop any evidence at all. You can't have any evidence of the effect because there's nobody openly serving. So we end up with this policy where the law says we will assume that the presence of case in the military in an open way, we will assume that that creates an unacceptable risk with absolutely no proof whatsoever. Thank you. Thank you, Counsel. The case just argued is submitted and we appreciate excellent arguments and excellent briefing by both counsel. With that, we move to the session report.
judges: Canby, Graber, Gould